## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES HENRY, | : | Civil No. 3:21-cv-968 |
| | : | |
| Petitioner | : | (Judge Mariani) |
| | : | |
| v. | : | |
| | : | |
| WARDEN, FCI SCHUYLKILL, | : | |
| | : | |
| Respondent | : | |

## MEMORANDUM

Presently pending before the Court is a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 (Doc. 1), filed by Petitioner James Henry ("Petitioner"), a federal inmate in the custody of the Federal Bureau of Prisons ("BOP"). Petitioner contends that his due process rights were violated in the context of two disciplinary hearings held at the Federal Correctional Institution, Fort Dix, New Jersey ("FCI-Fort Dix"). (*Id.*). He seeks restoration of his good conduct time and expungement of the incident reports. (*Id.* at pp. 7-8). For the reasons set forth below, the Court will deny the petition.

## I.    Background

### A.    BOP Disciplinary Process

The BOP's disciplinary process is fully outlined in Code of Federal Regulations ("C.F.R."), Title 28, Sections 541 through 541.8. These regulations dictate the manner in which disciplinary action may be taken should a prisoner violate, or attempt to violate,

institutional rules.  The first step requires filing an incident report and conducting an investigation pursuant to 28 C.F.R. § 541.5.  Staff is required to conduct the investigation promptly absent intervening circumstances beyond the control of the investigator.  28 C.F.R. § 541.5(b).

Following the investigation, the matter is then referred to the Unit Disciplinary Committee ("UDC") for an initial hearing pursuant to 28 C.F.R. § 541.7.  If the UDC finds that a prisoner has committed a prohibited act, it may impose minor sanctions.  *Id.*  If the alleged violation is serious and warrants consideration for more than minor sanctions, or involves a prohibited act listed in the greatest or high category offenses, the UDC refers the matter to a Disciplinary Hearing Officer ("DHO") for a hearing.  *Id.*  Greatest Severity category offenses carry a possible sanction of, *inter alia*, loss of good conduct time credits. *Id.* § 541.3.  In the event that a matter is referred for a hearing, the Warden is required to give the inmate advance written notice of the charges no less than 24 hours before the DHO hearing and offer the inmate a full-time staff member to represent him at the DHO hearing. *Id.* § 541.8 (c) and (d).

At the DHO hearing, the inmate is "entitled to make a statement and present documentary evidence" and has the right to present documents and submit names of requested witnesses and have them called to testify.  *Id.* § 541.8(f).  The DHO shall "call witnesses who have information directly relevant to the charge[s] and who are reasonably

2

available." *Id.* § 541.8(f)(2).  The DHO need not call repetitive witnesses or adverse witnesses. *Id.* § 541.8(f)(3).  The inmate has the right to be present throughout the DHO hearing except during "DHO deliberations or when [his] presence would jeopardize institution security, at the DHO's discretion." *Id.* § 541.8(e).  The DHO must "consider all evidence presented during the hearing." *Id.* § 541.8(f).  "The DHO's decision will be based on at least some facts and, if there is conflicting evidence, on the greater weight of the evidence." *Id.*  The DHO has the authority to dismiss any charge, find a prohibited act was committed, and impose available sanctions. *Id.* § 541.8.  The DHO must prepare a record of the proceedings sufficient to document the advisement of inmate rights, DHO's findings, "DHO's decision", specific "evidence relied on by the DHO" and must identify the reasons for the sanctions imposed. *Id.* § 541.8(f)(2).  A copy must be delivered to the inmate. *Id.*

### B.    Incident Report 3271972—Code 113 Violation

On June 25, 2019, Petitioner received Incident Report 3271972, charging him with violating Prohibited Act Code 113—possession of narcotics, and Prohibited Act Code 305— possession of anything unauthorized (glasses).  (Doc. 20-1, pp. 21-23, Incident Report). The Investigating Officer reported the incident as follows:

> On June 25, 2019, I was posted as West Compound 1.  At approximately 1:25 pm, I was conducting a search of room 347 in Unit 5803.  During my search of the area of Bunk 3 Lower, I discovered multiple pieces of paper cut into 2"x2" squares.  According to the Bed Book, wall locker 3 Lower belonging to inmate James, Henry 69397-054.  Inmate James was brought in to the room and questioned about the paper squares and then given a Visual

Search.  The results of the visual search were negative.  Inmate James was asked to leave the room and thorough search of his locker and area were conducted.  During the search, I discovered (4) pairs of nonprescription glasses.  (1) pair of Gucci, (1) pair of Cartier, (1) pair Cazal, (1) pair Burberry.  Under inmate[] James['] wall locker, I discovered (33) baggies of brown leafy substance, (5) small baggies of green leafy substance and (8) paper folds containing a green leafy substance.  The green leafy substance was put in to paper folds the same size as the others that were found next to inmate James's locker.  The contraband was secured and brought to the Lieutenant's Office.  The green leafy substance was tested by Liuetenant Fernandez and the test results are as follows: "On June 25, 2019, at 2:55 PM, I conducted a test of a green leafy substance found in room 347 during an area search by Officer R. Yannetta.  The green leafy substance was tested using NIK Test Kit E for Marijuana.  A small sample was placed in the test, the first ampule was broken and revealed no change in color, the second ampule was broken revealing violet color change, the third ampule was broken which resulted in grey color over top of the violet.  Based upon the Identidrug Chart used with the NIK Test, the green leafy substance tested positive for marijuana.  Five baggies of green leafy substance were recovered along with eight papers tightly folded containing more green leafy substance in each.  Officer Yannetta also recovered thirty-three baggies of a brown leafy substance and four pairs of designer glasses.

(*Id.* at p. 21).

At the time of delivery of the Incident Report, officials advised Petitioner of his rights, including his right to remain silent.  (*Id.* at p. 23).  He indicated that he understood his rights and remarked, "The Cartier and Cazal glasses are mine.  I took pictures with them on in my previous institution.  The other glasses are not mine.  I did not put any green leafy substance or anything under my locker."  (*Id.* at pp. 21, 23).  The UDC ultimately referred the Incident Report to the DHO due to the serious nature of the alleged incident.  (*Id.* at pp. 21-22).

4

On June 26, 2019, a staff member informed Petitioner of his rights at the DHO hearing and provided him with a copy of the "Inmate Rights at Discipline Hearing" form. (*Id.* at pp. 15-16, Inmate Rights at Discipline Hearing). Petitioner was also provided with a "Notice of Discipline Hearing before the Discipline Hearing Officer (DHO)" form. (*Id.* at p. 14, Notice of Discipline Hearing before the DHO). Petitioner signed both forms, he elected to call witnesses on his behalf, and declined representation by a staff member. (*Id.*).

The DHO hearing convened on July 26, 2019 regarding the Code 113 violation. (*Id.* at p. 13). During the July 26, 2019 hearing, the DHO confirmed that Petitioner received advanced written notice of the charges and that he had been advised of his rights before the DHO. (*Id.* at p. 10). Petitioner declined a staff representative, waived his right to call witnesses, expressed an understanding of his rights before the DHO, informed the DHO that he received a copy of the amended incident report, and denied the charges. (*Id.*). He provided the following statement: "No, that is not true; Staff must have planted it here, I did not have anything." (*Id.*). Petitioner cited no procedural issues and presented a handwritten statement denying the charge of possessing narcotics. (*Id.* at pp. 10, 12).

The DHO found sufficient evidence that Petitioner committed the Code 113 violation after considering and relying upon the reporting staff member's written statement, the investigation, Petitioner's verbal and written testimony during the hearing, Petitioner's inability to produce any evidence or witnesses to corroborate his claims that staff members

5

planted the narcotics and fabricated the facts, photographs depicting the narcotics, staff

memorandum, and the results of the NIK test. (*Id.* at pp. 12-13).

The finding of guilt resulted in disallowance of 41 days of good conduct time, 60 days

disciplinary segregation, and loss of privileges for 365 days. (*Id.* at p. 13). The DHO cited

the following reasons for imposition of sanctions:

> The action/behavior on the part of Possessing any Narcotics, significantly
> threatens the health, safety, and welfare of not only himself, but of all
> persons, whether another inmate or any other person, who are involved in the
> act. This will not be tolerated. Past evidence has shown that disruptive
> conduct has led to serious damage to the institution, as well as serious injury
> to staff and inmates involved and not involved in the disruptive conduct. The
> sanctions imposed by the DHO were taken to inform the inmate that he will be
> held responsible for his actions/behaviors at all times.
>
> The sanction involving Disciplinary Segregation was taken to deter any further
> negative behavior, and to enforce the standard of inmates being held
> responsible for their actions. A total of 60 Days Disciplinary Segregation is
> being suspended (for this incident report) for a period of 180 Days clear
> conduct, as a motivation, to refrain from ANY, negative behavior. Any
> committed infractions during this period; you will be required to serve this 60
> Days Disciplinary Segregation in full.
>
> The sanctions imposed involving Disallowance of Good Conduct Time and
> Loss of Privileges Comm was also taken to enforce the standard of inmates
> being held responsible for their actions. It is believed, and past evidence has
> supported that this type of behavior can be disruptive to the Security or
> Orderly Running of a BOP Facility and cannot be tolerated.
>
> The DHC considered your disruptive behavior, your willingness to NOT
> accept ANY responsibility for your actions, the seriousness of this particular
> prohibited act infraction, and the fact there is a zero tolerance for inmates to
> utilize or possess any types of illegal drugs, alcohol, in a Correctional Setting,
> when determining your sanctions for this prohibited act.

6

> You should be aware, any future disruptive behavior, will be cause for the DHO to consider more significant progressive disciplinary sanctions, in accordance with P.S. 5270.09, Page 55, in an effort to convince you this type of behavior is not acceptable, and it is imperative to abide by all institutional rules, and regulations. This type of behavior will ABSOLUTELY not be tolerated.
>
> The DHO expects these sanctions will serve to deter you from similar misconduct in the future and convince you to abide by all institution rules and regulation

(*Id.*).

On February 4, 2020, the DHO Report for the June 25, 2019 incident was delivered to Petitioner and he was advised of his appeal rights. (*Id.*). However, this DHO report was issued with an incorrect incident number. (Doc. 20-1, p. 5, Declaration of Keith Hampton, DHO, FCI-Fort Dix, ¶ 8). The DHO Report was accurate in all other respects. On January 11, 2022, a corrected DHO Report was issued and delivered to Petitioner. (Doc. 20-1, pp. 25-28).

### C.    Incident Report 3276251—Code 111 Violation

On July 7, 2019, Petitioner was suspected of introducing contraband into FCI-Fort Dix through the visiting room. (Doc. 9-1, p. 9, Discipline Hearing Officer Report). Officer Kish observed Petitioner in the visiting room via CCTV and reported the incident as follows:

> On July 07, 2019 at approximately 1:15 P.M. I, Officer Kish, was monitoring inmates James, Henry # 69397-054 via CCTV as Visiting Room Officer #2. During this time, I observed this inmate's right arm tucked inside of his shirt.

7

> This inmate appeared to be reaching behind himself, underneath his shirt, in
> a suspicious manner.  I relayed this information to the Visiting OIC, B. Colom,
> at which point he proceeded to take the inmate into the strip out area to
> conduct a visual search.  I proceeded to where this inmate and his visitor,
> identified as Latisha Denise Jones, were sitting in order to search items left
> on the table for suspected contraband.  In doing so, a strong odor of
> marijuana was detected in the immediate area of the visitor.  There were no
> other inmates or visitors in close proximity to these two individuals.
> Operations Lieutenant was notified and the inmate was escorted to the
> Lieutenants complex at the completion of the visual search.

(Doc. 9-1, p. 21).

Petitioner was escorted to medical and placed in a dry cell for observation.  (*Id.* at p.

22).  Officer Von Schirach conducted a visual search of Petitioner and the cell, with negative

results.  (*Id.*).  The officer then exited the cell and observed a white balloon on the floor

where Petitioner had been standing.  (*Id.*).

On July 10, 2019, Petitioner received Incident Report 3276251, charging him with

violating Prohibited Act Code 111—introduction of narcotics.  (Doc. 9-1, p. 15).  The Incident

Report contained the following description of the incident:

> At 3:55 PM I was notified by LT Decker hat he conducted a "NIK test kit on a
> green leafy substance that was found in medical where inmate James Reg.
> No. 69397-054 was standing prior to being placed on dry cell.  The testing of
> the green leafy substance was initiated with NIK test kit E.  After placing the
> green leafy substance in the test kit the first ampoule was broken and there
> was no change in the color of the test solution.  The second ampoule was
> broken which produced a result as displayed by a color change of the test
> solution to violet.  The third and final ampoule was broken which produced a
> result as displayed by a grey in color upper layer over violet layer, indicating a
> positive test for Marijuana.  Photographs were taken to document the color
> displayed in the positive test kit.

(*Id.*).

At the time of delivery of the Incident Report, officials advised Petitioner of his rights, including his right to remain silent.  (*Id.* at p. 16).  He indicated that he understood his rights and remarked, "I did not have anything on me."  (*Id.* at p. 15).  The UDC referred the Incident Report to the DHO due to the severity of the alleged incident.  (*Id.*).

On July 17, 2019, a staff member informed Petitioner of his rights at the DHO hearing and provided him with a copy of the "Inmate Rights at Discipline Hearing" form.  (*Id.* at pp. 12-13, Inmate Rights at Discipline Hearing).  Petitioner was also provided with a "Notice of Discipline Hearing before the Discipline Hearing Officer (DHO)" form.  (*Id.* at p. 14, Notice of Discipline Hearing before the DHO).  Petitioner signed both forms, he elected to call witnesses on his behalf, and declined representation by a staff member.  (*Id.*).

The DHO hearing convened on July 26, 2019.  (*Id.* at p. 7).  During the July 26, 2019 hearing, the DHO confirmed that Petitioner received advanced written notice of the charges and that he had been advised of his rights before the DHO.  (*Id.*).  Petitioner declined a staff representative, waived his right to call witnesses, expressed an understanding of his rights before the DHO, and denied the charges.  (*Id.*).  He provided the following statement: "This is not true; I had sperm for my wife.  I didn't have anything else.  I brought down sperm, and staff though[t] it was something else, I only had the sperm."  (*Id.*).  Petitioner cited no procedural issues and offered no additional documentary evidence.  (*Id.*).

Initially, the DHO noted that Petitioner did not receive his incident report within twenty-four hours of the incident because he was on dry cell status which is in compliance with Program Statement 5270.09, documenting delays for incidents reports being referred for Criminal Review/Consideration or amending to correct errors, or clarifying information. (*Id.* at p. 9). The DHO concluded that the delay of the incident report did not cause any undue hardship on Petitioner's ability to defend himself at the hearing. (*Id.*).

The DHO then found sufficient evidence that Petitioner committed the Code 111 violation after considering and relying upon the reporting staff member's written statement, the investigation, Petitioner's testimony during the hearing, Petitioner's inability to produce witnesses to corroborate his claim that he was providing sperm to his wife, the witness statements, photographs depicting the narcotics, and the results of the NIK test. (*Id.* at pp. 8-10).

The finding of guilt resulted in disallowance of 41 days of good conduct time, 60 days disciplinary segregation, and loss of visiting privileges for 574 days. (*Id.* at p. 10). The DHO cited the following reasons for imposition of sanctions:

> The action/behavior on the part of an inmate to introduce drugs and drug related paraphernalia threatens the health, safety, and welfare of not only himself, but of all persons, whether another inmate or any other person, who is involved in the act. These actions will not be tolerated. Past evidence has shown those inmates who utilize illicit drugs causes disruptive conduct, and this leads to serious damage to the institution, as well as serious injuries to staff and inmates involved and not involved in the disruptive conduct. The

sanctions imposed by the DHO were taken to inform you that you will be held responsible for your actions/behaviors at all times.

The sanction involving Disciplinary Segregation was taken to deter any further negative behavior, and to enforce the standard of inmates being held responsible for their actions.  A total of 60 Days Disciplinary Segregation is being suspended (for this incident report) for a period of 180 days clear conduct, as a motivation, to refrain from ANY, negative behavior.  Any committed infractions during this period; you will be required to serve this 60 Days Disciplinary Segregation in full.

The sanctions imposed involving Disallowance of Good Conduct Time, and Loss Privileges=Visits were also taken to enforce the standard of inmates being held responsible for their actions.  It is believed, and past evidence has supported that this type of behavior can be disruptive to the Security or Orderly Running of a BOP Facility and cannot be tolerated.

The DHO considered your significant disruptive behavior, your willingness to NOT accept ANY responsibility for your actions, the seriousness of this particular prohibited act infraction, and the fact there is a zero tolerance for inmates to introduce (attempt), utilize or possess any types of illegal drugs, or alcohol in a Correctional Setting, when determining your sanctions for this prohibited act.

(*Id.*).

At the conclusion of the hearing, the DHO provided a copy of the report to Petitioner and advised him of his appeal rights.  (*Id.* at p. 11).

## II.   Discussion

Petitioner claims that his due process rights were violated in the context of the disciplinary hearing process.  The Due Process Clause of the Fifth Amendment of the Constitution of the United States provides: "No person shall . . . be deprived of life, liberty, or

11

property, without due process of law." U.S. Const. amend. V. Federal inmates possess a liberty interest in good conduct time. *See Wolff v. McDonnell*, 418 U.S. 539, 555-57 (1974); *Young v. Kann*, 926 F.2d 1396, 1399 (3d Cir. 1991).

When a prison disciplinary hearing may result in the loss of good conduct time credits, due process requires that the prisoner receive certain due process protections: (1) written notice of the claimed violation at least twenty-four (24) hours in advance of the hearing; (2) the opportunity to call witnesses and present documentary evidence when consistent with institutional and correctional goals; (3) assistance in presenting a defense if the inmate is illiterate; (4) an impartial tribunal; and (5) a written statement by the factfinder as to evidence relied on and reasons for the disciplinary action. *See Wolff*, 418 U.S. at 564.

Where the due process requirements are met, the decision of the hearing examiner will be upheld if there is "some evidence" in the record to support the decision. *Superintendent v. Hill*, 472 U.S. 445, 455 (1985); *see also Young*, 926 F.2d at 1402-03 (applying *Hill* standard to federal prisoner due process challenges to prison disciplinary proceedings). The determination of whether the standard is satisfied "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* at 455.

With respect to Incident Report Number 3276251, the Court first observes that

12

Petitioner did not receive notice of the charges within twenty-four hours of the incident because he was on dry cell status. 28 C.F.R. § 541.5(a) states that an inmate is to "ordinarily receive the incident report within 24 hours of staff becoming aware of [his] involvement in the incident." But the regulations do not mandate such a timeframe and neither does *Wolff*. *See Millhouse v. Warden Lewisburg USP*, 785 F. App'x 931, 934 (3d Cir. 2019); *see also Lang v. Sauers*, 529 F. App'x 121, 123 (3d Cir. 2013). *Wolff* only requires that an inmate be provided notice of the charges against him at least twenty-four hours in advance of the disciplinary hearing. *See Wolff*, 418 U.S. at 564. It is undisputed that Petitioner received such notice. Thus, there is no merit to any argument that officials violated the procedures required by *Wolff*.

Next, in accordance with *Hill*, there need only be "some evidence" to support the disciplinary decision. 472 U.S. at 455-56; *see also Denny v. Schultz*, 708 F.3d 140, 145 (3d Cir. 2013) (noting that the Court "need only find that the [Hearing Officer's] decision had 'some basis in fact' in order to affirm the decision as comporting with the Due Process Clause").

Regarding Incident Report Number 3276251, in concluding that the greater weight of the evidence supported a finding of guilt, the DHO considered the reporting staff member's written statement, the investigation, Petitioner's testimony during the hearing, Petitioner's inability to produce witnesses to corroborate his claim that he was providing sperm to his

13

wife, the witness statements, photographs depicting the narcotics, and the results of the NIK test. The DHO's reliance on such documentary evidence supports a conclusion that the decision has some basis in fact and is supported by some evidence. Additionally, Petitioner claims that his signature was forged on the Notice of Discipline Before the DHO form for the July 7, 2019 incident, Incident Report Number 3276251. Respondent has submitted the declaration of the BOP Correctional Counselor that served Petitioner with the Notice of Discipline Before the DHO form. (Doc. 20-1, pp. 36-37, Declaration of Jose Cuevas, BOP Correctional Counselor at FCI-Fort Dix). The Correctional Counselor declares that he had no reason to forge Petitioner's name on the form. (*Id.* ¶ 7). He explains that if Petitioner had refused to sign the form, he would simply document that the inmate refused to sign the form. (*Id.* ¶ 7). He further explains that the DHO hearing would have proceeded even if Petitioner did not sign the form. (*Id.*). Petitioner has not provided any evidence, via an affidavit, declaration, or any other statement made under the penalty of perjury to support his claim that his signature was forged on the Notice of Discipline Before the DHO form relating to Incident Report Number 3276251. For these reasons, the Court finds that this claim is meritless.

As to Incident Report Number 3271972, in concluding that the greater weight of the evidence supported a finding of guilt, the DHO considered the reporting staff member's written statement, the investigation, Petitioner's verbal and written testimony during the

hearing, Petitioner's inability to produce any evidence or witnesses to corroborate his claims that staff members planted the narcotics and fabricated the facts, photographs depicting the narcotics, staff memorandum, and the results of the NIK test. The Court again concludes that the DHO's reliance on such documentary evidence supports a finding that the decision has some basis in fact and is supported by some evidence.

Finally, the Court finds that all sanctions imposed by the DHO in both proceedings were within the limits of 28 C.F.R. § 541, *et seq*. Petitioner was found guilty of two 100-level, greatest severity prohibited acts. Pursuant to 28 C.F.R. § 541.3, the following are the sanctions available for 100-level prohibited acts:

A.    Recommend parole date rescission or retardation.
B.    Forfeit and/or withhold earned statutory good time or non-vested good conduct time (up to 100%) and/or terminate or disallow extra good time (an extra good time or good conduct time sanction may not be suspended).
B.1.  Disallow ordinarily between 50% and 75% (27-41 days) of good conduct time credit available for year (a good conduct time sanction may not be suspended).
C.    Disciplinary segregation (up to 12 months).
D.    Make monetary restitution.
E.    Monetary fine.
F.    Loss of privileges (e.g., visiting, telephone, commissary, movies, recreation).
G.    Change housing (quarters).
H.    Remove from program and/or group activity.
I.    Loss of job.
J.    Impound inmate's personal property.
K.    Confiscate contraband.
L.    Restrict to quarters.
M.    Extra duty.

15

28 C.F.R. § 541.3 (Table 1).

The sanctions imposed by the DHO with respect to Incident Report Numbers 3271972 and 3276251 were consistent with the severity level of the prohibited acts and within the maximum available to the DHO.

Further, "[t]he Eighth Amendment is violated only when a punishment is grossly disproportionate to the severity of the offense." *Levi v. Holt*, 192 F. App'x 158, 162 (3d Cir. 2006) (citing *Rummel v. Estelle*, 445 U.S. 263, 271-74 (1980)).  Therefore, only sanctions that "impose [ ] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," may be deemed excessive.  *Moles v. Holt*, 221 F. App'x 92, 95 (3d Cir. 2007) (citing *Sandin v. Conner*, 515 U.S. 472, 484 (1995)).  The penalties imposed here, loss of good conduct time, disciplinary segregation, and loss of privileges, do not work an "atypical and significant hardship" on Petitioner and do not serve to extend his confinement beyond the expected parameters of his sentence.  *Sandin*, 515 U.S. at 484-85. Consequently, he is not entitled to relief.

## III.   **Conclusion**

Based on the foregoing, the Court will deny the petition for writ of habeas corpus.  A separate Order shall issue.

Robert D. Mariani
United States District Judge

Dated: March 28, 2022